## CUTTER v. IOWA WATER CO. et al.

### (Circuit Court, S. D. Iowa, E. D. October 9, 1899.)

1. EQUITY PLEADING—BILL OF REVIEW.

A bill filed by one not personally a party to a prior decree of the court, attacking the validity of such decree and asking its vacation because of matters outside of the decree itself, and not alleged to have been newly discovered, is not a bill of review.

2. SAME—MULTIFARIOUSNESS.

A bill seeking the vacation of a decree and of subsequent proceedings based thereon, as void, is not multifarious because it alleges, as grounds of such invalidity, fraud on the part of parties to the decree, and also invalid action by the court; both charges being directed to the same end,—the establishing of the invalidity of the decree,—and the same parties defendant being required to each.

3. SAME—INCONSISTENT PRAYERS.

A bill is multifarious which contains prayers in the alternative which are antagonistic,—one asking the setting aside of a decree and subsequent proceedings based thereon, on the ground that the decree is void, and the other asking relief based on the decree as valid,—since in the latter aspect the allegations of the bill tending to show the invalidity of the decree are not only immaterial, but opposed to the prayer. In such case the bill is one of alternative cases, and not a case for alternative relief.

4. LACHES—ACQUIESCENCE BY BONDHOLDER IN DECREE OF FORECLOSURE.

A holder of bonds secured by trust deed, who knowingly permits the trustee to conduct foreclosure proceedings in such a fraudulent manner as to render the decree and sale thereunder void, without making any objection or calling the court's attention to the facts, is guilty of such laches as will, if unexcused, preclude him from maintaining a suit to set aside such decree and sale.

In Equity. On demurrer to bill.

The bill herein is lengthy. It attempts, with considerable of detail, to recite various matters in connection with a foreclosure suit lately pending in this court, wherein one of the defendants herein, the Farmers' Loan & Trust Company, was, as trustee, plaintiff, and another defendant herein, the Iowa Water Company, was, with others, defendant. Various matters pertaining to the mortgage foreclosed, the water-plant property against which said foreclosure was brought, and the bonds secured by said trust deed, are also set up. Collusive and fraudulent acts on the part of said trustee are attempted to be charged, and consequent damage to plaintiff herein. Without attempting to reproduce it in detail, the bill: (1) Recites the execution on April 15, 1887, of a trust deed by the Iowa Water Company, a corporation operating a water-supply plant at Ottumwa, Iowa, in favor of said Farmers' Loan & Trust Company, in the sum of $400,000, upon the property, rights, and franchises then owned or that might thereafter be acquired by said Iowa Water Company; that plaintiff, Cutter, is the owner of 15 of the 400 bonds provided for in said trust deed; that, default having occurred in past-due interest, said trustee upon July 11, 1894, instituted in this court foreclosure proceedings under said trust deed, and procured the appointment of a receiver for said water-supply plant, which said proceedings progressed to foreclosure decree on February 19, 1897, for $349,000 principal, and $69,810 unpaid coupons, sale of said plant, and deed to the purchasers at said sale. (2) Alleges that said foreclosure suit was instituted and conducted under direction of defendants herein, Potter, Smith, Sandford, and Mills, "as a self-selected committee," who invited the bondholders to intrust to such committee the possession of the bonds and the management of said litigation, and that in all its proceedings said trustee "was entirely subservient to the wishes and dictation of said committee." Annexed to the bill is the circular issued by said committee, wherein they invite deposit of bonds, and announce the general plan under which said committee will proceed and reorganization be had, if a majority of the outstanding bonds

are deposited for action thereunder. (3) Attacks said foreclosure decree as void because entered without proof of amount of bonds then outstanding; because such decree by its terms required parties defendant within 20 days from its said entry to pay the amounts therein found to be due, with costs of complainant as trustee, counsel fees, compensation to receiver, etc., whereas the amount of such counsel fees, compensation, etc., was not fixed by the court until long after the expiration of said 20 days, and no extension of time for such payment was made after same were so fixed. (4) Alleges that, in pursuance of a settled purpose on part of said bondholders' committee to depreciate the value of the property and to debar bidders from bidding at said foreclosure sale, said committee, in collusion with said trustee, attacked said decree as null and void because in the proceedings leading to said decree the judge of the court before whom said proceedings were pending was a brother-in-law of the special master to whom said case was referred, and that said committee in pursuance of said purpose issued two circular letters exhibited with the bill, the first of which—dated June, 1897—assumes to state the situation and prospects for the future, and outlines with much of detail the plan of reorganization proposed by the committee, and the second of which declares the plan of reorganization theretofore by the committee proposed as operative and in full force. (5) Attacks the sale under said foreclosure decree as not made on date named in master's notice of sale, but on second day thereafter; that said plant property, though costing said water company over $430,000, was bid off by said bondholders' committee at the nominal sum of $75,100, for which a deed approved by this court was delivered to said committee; that unproven coupons were accepted as part purchase price; that the entire property of said grantor in trust deed was sold as an entirety, and without a prior incumbrance thereon being designated; that said decree, by collusion of counsel for said committee and counsel for said trustee, was so drawn as to permit uncertain and undetermined amounts to be asserted against the proceeds, and as to state incorrectly the prior incumbrance on such plant property, in violation of the trust imposed on said trustee and on said committee. (6) Alleges that interveners in said foreclosure proceedings appealed from said decree to the circuit court of appeals, and said court on January 17, 1898, by a divided court, affirmed said decree. (7) Alleges that a balance of $1,507.79 remaining in the hands of the receiver, which was revenue produced by said property during the receivership, was paid over to said committee. (8) Alleges that, while said water-plant property was struck off to said committee at the said nominal price, yet said committee before bidding at said sale had arranged to convey said property to defendant the City Water-Supply Company, and did so convey within five days after receiving deed from the master, for the consideration of $524,000, in fraud of plaintiff, and to his damage. (9) Alleges that but 44 bonds, inclusive of the 15 bonds of this plaintiff, were proven up in said foreclosure proceedings and entitled to share in proceeds of said foreclosure; that plaintiff is therefore entitled to $15/44$ of such proceeds, whereas defendants wrongfully deny to plaintiff any further sum than $1,538.70; and it is also alleged that sufficient funds were not deposited with the clerk to perform the terms of said foreclosure decree. (10) Avers that the reference in this court of issues in said foreclosure suit to Judge Babb, as special master, was in violation of law, and null and void, in that said special master and the judge of this court had married sisters, and that the action by said special master taken, the confirmation thereof by this court, and all proceedings based thereon, are null and void, and that the said affirmance by the circuit court of appeals of the action of this court in said foreclosure matter by a divided court deprived plaintiff of property without due process of law, and in violation of his constitutional rights. (11) Recites that two mortgages, respectively securing bonds in the sum of $150,000 and $325,000, have been executed to the defendant Continental Trust Company, as trustee, on said water-plant property (the exhibits show such trust deed to have been executed by the City Water-Supply Company, to whom the bondholders' committee, upon receipt of the master's deed therefor, conveyed said water-plant property), and said mortgages are duly of record, but that said rights thereunder of said trustee are inferior to plaintiff's rights, etc. (12) The relief prayed is that decree declare null and void said foreclosure proceedings, and the decrees and orders entered therein, the said sale

by the special master, and his conveyance thereunder, and plaintiff be declared to be the owner of $15/44$ of said entire property; that, if same are not decreed null and void, then that the actual purchase price be deemed to be $524,000, and that plaintiff be decreed to own a $15/44$ interest therein; that the mortgages to said Continental Trust Company be declared null and void as to plaintiff; and for other relief as may be equitable.

W. E. Blake, for plaintiff.
W. A. Underwood and Wm. McNett, for defendants.

WOOLSON, District Judge (after stating the facts as above). 1. The first point to be considered relates to the nature of the bill. The demurrants insist it is, in part at least, a bill of review, and as such insufficient, in that it does not set out the decree attacked, and was filed without leave first had. Plaintiff insists it is not a bill of review. Plaintiff, in his individual capacity, was not a party to the original suit. And this suit is not brought "to reverse or modify a decree, that has been signed and enrolled, for error in law apparent on the face of the decree, or on account of new facts discovered since publication was passed in the original case, and which could not by the exercise of due diligence have been discovered or used before the decree was made." Fost. Fed. Prac. § 354; Story, Eq. § 403. The pending bill attacks the decree because of matters outside of the decree itself. It makes no attempt either to show that plaintiff herein was not fully aware of the proceedings of which this bill makes complaint, or to set up newly-discovered facts impeaching the foreclosure proceedings.

2. Is the pending bill multifarious in its charges of fraud as to trustee and bondholders' committee, and its charges of invalid action on the part of the court and those acting under its direction? "By 'multifariousness' 'is meant the improperly joining in one bill distinct and independent matters, and thereby confounding them; as, for example, the uniting in one bill of several matters, perfectly distinct and unconnected, against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill.' Story, Eq. Pl. § 271. In Daniell, Ch. Prac. 335, it is said in explanation of this that 'it may be that the plaintiffs and defendants are parties to the whole of the transactions which form the subject of the suit, and nevertheless those transactions may be so dissimilar that the court will not allow them to be joined together, but will require distinct records.'" Walker v. Powers, 104 U. S. 245, 251. Yet "the principle of multifariousness is one very largely of convenience." U. S. v. American Bell Tel. Co., 128 U. S. 315, 352, 9 Sup. Ct. 91. As a result naturally to be expected, "there is, perhaps, no rule established for the conduct of equity pleadings, with reference to which (whilst as a rule it is universally admitted) there has existed less of certainty and uniformity in its application than has attended this relating to multifariousness. This effect, flowing, perhaps inevitably, from the variety of modes and degrees of right and interest entering into the transactions of life, seems to have led to a conclusion rendering the rule almost as much of an exception as a rule, and that conclusion is that each case

must be determined by its peculiar features." Shields v. Thomas, 18 How. 253, 259, quoted and approved in Brown v. Deposit Co., 128 U. S. 403, 410, 9 Sup. Ct. 129.

With regard to the charge of multifariousness in the pending bill, so far as such bill relates to any one defendant, the remarks of the supreme court in Brown v. Deposit Co., 128 U. S. 412, 9 Sup. Ct. 130, are pertinent:

To support the objection of multifariousness, because the bill contains different causes of suit against the same person, two things must concur: First, the grounds of suit must be different; second, each ground must be sufficient, as stated, to sustain the bill.

And again:

The case against one defendant may be so entire as to be incapable of being prosecuted in several suits, and yet some other defendant may be a necessary party to some portion only of the case stated. In the latter case the objection of multifariousness cannot be allowed to prevail.

As to a bill wherein many parties are made defendants, the supreme court, in the opinion from which I have just quoted, state:

It is not indispensable that all the parties shall have an interest in all the matters contained in the suit. It will be sufficient if each party has an interest in some material matters in the suit, and they are connected with the others.

Applying these clearly-stated principles to the pending bill, we find that the pleader has attempted to direct the bill primarily against the foreclosure decree, under his contention that such decree is null and void. In so doing, he felt compelled to make recital of the various steps leading up to such decree, whether these were taken in or out of court, by the bondholders' committee or the trustee; but all relate to the attempted setting aside of the decree, and are claimed to have entered into, and to be a part of, the matters because of which the decree is alleged to be void. In this view, the charges of fraud on the part of the trustee, in whose name the foreclosure proceedings were pending, are not antagonistic to the allegations of invalid action by the court, so that the two may not stand together in the one bill. The same parties must be defendants therein, if separate suits were instituted to have the decree declared null and void,—one suit based on said alleged fraudulent conduct of trustee, the other suit on alleged invalid action of court. If convenience is to be a largely controlling test, then the convenience of the parties is served, without injury to them, by having these matters litigated in the same suit. So, also, as to the matters attacked which occurred after entry of decree. Their alleged invalidity is based on the alleged invalidity of the decree, and the parties necessary to the bill attacking the decree are so interested in the attack on those subsequent matters as that they are not improperly made defendants to the latter attack. To this latter attack other parties are made defendants; that is, the reorganized water-plant owner, and the trustee of the bonds issued under such reorganization. I do not see any good reason for holding that these other parties are improperly joined in a suit which thus attacks the decree whereon their rights are so largely based. In other words, though all of the parties to this suit do not have the same interest in every material feature of

the suit, yet each "has an interest in some material matters in the suit, and they are all connected with the others." The main recitals of the bill relate to and affect the alleged invalidity of the decree, or are dependent thereon. There is little, if any, of the evidence which may be introduced to prove the allegations of the bill, as to the decree being void and the grounds thereof, which will not concern and affect the rights of each of the parties made defendants herein. Around the alleged invalidity of the decree are grouped the rights and interests of all the parties. That some of these parties were not immediately concerned in or parties to some of the transactions stated in the bill will not justify the court in declaring the bill to be multifarious, if they were concerned in and parties to some transactions stated, with which the other transactions are connected as a part of the general matters stated and relief prayed in the bill. Said Mr. Justice Harlan, at circuit, in Sheldon v. Packet Co., 8 Fed. 769, 770:

As a general rule, the court will not compel parties to incur the expense, vexation, and delay of several suits, where the transactions constituting the subject of the litigation, or out of which the litigation arises, are so connected by their circumstances as to render it proper and convenient that they should be examined in the same suit, and full relief given by one comprehensive decree. A different rule would often prove to be both oppressive and mischievous, and could result in no possible benefit to any litigant whose object was not simply to harass his adversary.

And later in the opinion the learned justice approvingly quotes from the opinion of Chancellor Kent in Brinkerhoff v. Brown, 6 Johns. Ch. 139, the following:

It thus appears from the bill that all the defendants were not jointly concerned in every injurious act charged. There was a series of acts on the part of the persons concerned in the company, all produced by the same fraudulent intent, and terminating in the deception and injury of the plaintiffs. The defendants performed different parts in the same drama, but it was still one piece, the entire performance, marked by different scenes; and the question now occurs whether the several matters charged are so distinct and unconnected as to render the joining of them in one bill a ground of demurrer. [Various authorities reviewed.] The principle is that a bill against several persons must relate to matters of the same nature, and having a connection with each other, and in which all the defendants are more or less concerned, though their rights in respect to the general subject of the case may be distinct.

It may be noted, in addition to what has before been stated as to the pending bill, that the stockholders in the reorganized water-plant company, the defendant City Water-Supply Company, and bond-holders of bonds issued by it under the trust deed of which defendant Continental Trust Company is trustee, are largely and almost entirely the persons who held the bonds under the trust deed which was foreclosed in the suit whose decree is attacked herein.

3. In determining the question of multifariousness, I find greater difficulty with reference to matters involving the relief prayed. The prayers for relief are antagonistic; one being based on the theory of invalidity of the decree, and resulting, if successful in its entirety, in vacating sale thereunder, conveyance thereafter of the reorganized plant, and trust deed executed thereon. The other is based upon the theory of the decree as valid, and resulting, if successful in its entirety, in establishing on such valid decree the asserted rights and inter-

ests of plaintiff in the reorganized water-plant property, or proceeds of sale. If the latter prayer stood alone in the bill, a large part of the contents of the bill would be immaterial and opposed to the prayer, and stricken out on exceptions, since it would in no wise be pertinent to or tending to establish the theory on which the relief is prayed. The relief prayed in pending bill is in the alternative. If this relief were not antagonistic in the alternative, and were based on the same state of facts, the bill might not be multifarious (Story, Eq. Pl. § 42); for then, the facts being proven, the relief granted would depend upon the conclusion which the court would draw from such proven facts. But no state of facts can maintain the decree as null and void and also as valid. In the pending bill, if the charges of fraud, collusion, etc., are proven (assuming the same to rise to the grade which might justify the court in declaring the alleged invalidity of the decree), the alternative or last-prayed relief could not be granted in any part, or in the direction it points, since that relief is antagonistic to such proven fraud, and is based on the decree being valid.

Shields v. Barrow, 17 How. 130, was a suit to set aside an agreement for fraud. An amendment was filed to the bill, which prayed specific performance. Justice Curtis, in the opinion therein rendered, said:

So that the bill thereafter presented not only two aspects, but two diametrically opposite prayers for relief, resting upon necessarily inconsistent cases: the one declaring that the court would declare the contract rescinded for imposition and other causes, and the other that the court would declare it so free from all exceptions as to be entitled to its aid by a decree for specific performance. * * * A bill may be originally framed with a double aspect, or it may be so amended as to be of that character, but the alternative case stated must be the foundation for precisely the same relief.

In St. Louis, V. & T. H. R. Co. v. Terre Haute & I. R. Co., 33 Fed. 440, 448, Circuit Judge Gresham applied this same general principle where the bill prayed that a lease be declared void, and also contained the alternative prayer for an accounting of the money due by the terms of the lease, should it be declared valid; and the court held the bill to be multifarious.

The circuit court of appeals, Seventh circuit, in Merriman v. Railroad Co., 12 C. C. A. 275, 64 Fed. 535, considered with much fullness, as applied to that case, the principle here under discussion. As found by that court, the bill included a prayer to redeem, and also a prayer to acquire bonds issued on the property sought to be redeemed in first alternative of the prayer. Thus the first relief prayed was on the theory that the plaintiff was entitled to acquire and appropriate as its own, through such redemption, the property upon which were based the bonds, which in this latter prayer were recognized as validly issued, but which would have no security if such property were redeemed. The court declare (page 290, 12 C. C. A., and page 550, 64 Fed.):

Thus construed, the bill states two inconsistent causes of action, and the right to recover upon one theory is destructive of the right to recover on the other. Such a bill cannot be maintained. It would be multifarious and self-contradictory. * * * It is urged by counsel for appellants that a bill is

not multifarious, and may well be maintained, where, upon a given case, there is a prayer for consistent alternative relief. The rule is undoubtedly well settled that upon a given case there may be prayer for consistent alternative relief. But we do not understand that alternative and inconsistent cases may be stated in the bill, coupled with prayers for alternative and inconsistent relief. If the appellants' case was solely that the Eastern Illinois Company has no title to the property of the Danville Company, they might pray for various forms of alternative relief consistent with that case; but they cannot in the same bill make a case that it has no title, and also a case that it has title, and then ask for inconsistent relief according to the different cases thus made. Such course of procedure we do not understand is warranted by the doctrine of alternative relief. Such are alternative cases, and not cases for alternative relief. They are inconsistent, for a decree of one of these forms of relief would proceed upon a theory fatal to the other form of relief.

If it be claimed that the facts as alleged in the pending bill support but the one theory or prayer for relief, viz. that the decree, deed, etc., attacked are null and void, then it must follow that the alternative relief, based on validity of decree, has no proper place in the bill, and should be stricken therefrom before defendants are required to answer. But if, as may be assumed from the recognized ability of counsel, and by his signature thereon approving same, and as counsel for plaintiff contends, the bill is so framed as that it will support the relief decreed, whichever of the alternative prayers may thus be granted, then it must follow that the bill is one "of alternative cases, and not a case for alternative relief," as the latter is commonly understood. In this regard the bill is multifarious, and defendants should not be required to plead thereto until it is purged of such multifariousness.

4. The question of laches on the part of plaintiff, so forcibly urged by defendants, may present controlling features. There is no statement or suggestion in the bill that plaintiff was ignorant of the matters as to which he now complains, while such matters were transpiring. While it is undoubtedly true that the plaintiff trustee in the foreclosure suit was, as such trustee, the representative therein of the present plaintiff, it cannot be that plaintiff herein was in any wise prohibited from making known to this court the alleged fraud of the trustee while it was in progress. Good faith towards the court should have prompted this plaintiff to have promptly made known to the court the bad faith of the trustee and his wrongful collusion with others, if such bad faith and collusion existed, as now charged. It is not necessary to state here what would have been the action of the court had such suggestions thus been made. It is sufficient that this court possessed the power to arrest the further perpetration of such fraud as soon as the same became manifest to the court, and to prevent its being carried to its consummation. The situation in which the bill presents the present plaintiff does not commend itself to the court; for, in the absence of any statement that he was at the time ignorant thereof, the court must assume that, with the knowledge that what he now charges as fraud and collusion on the part of the trustee was then occurring, he permitted the same to proceed unchallenged, and the court by its action and decree to fasten this fraud upon the property, and confirm as valid the results of such fraud, and, further, permitted those actively and knowingly partici-

pating in such fraud to convey the water-plant property, and thereafter the execution of trust deeds and issuance of a large amount of bonds thereunder, without in any wise attempting to prevent the same. The like general considerations apply to what plaintiff now alleges to be invalid action of the court, whereby he claims the decree in said foreclosure suit is null and void. Where was plaintiff while such alleged invalid proceedings were in progress? Interested, as he now claims, because of his being a bondholder under the trust deed then being foreclosed, why did he not promptly appear in court, and present to the court the question of what he now insists was such invalid action, taken by the court at the instance of plaintiff's trustee, as that the final result in the foreclosure suit is thereby made null and void? In any amendment to be made to the bill, plaintiff should state the facts avoiding what now constitute these laches on his part, if such facts exist.

5. I do not deem it necessary to attempt to decide the remaining point of demurrer, as to whether the bill sufficiently presents fraud, until the bill is shorn of its present objectionable features, which have just been considered and determined. Manifestly a far different state of facts is necessary to support a decree which shall declare the former decree null and void, from those necessary to support a decree which shall declare such former decree valid, and establish the rights and interests of plaintiff thereunder. Until the relief prayed is distinctly set out, so that the court may be clearly advised, the task is useless to attempt to determine whether there is such equity in the bill as that it may be maintained. When the court is advised as to the relief which plaintiff demands, it may then examine the bill to ascertain whether the facts pleaded would sustain such relief. But the court must decline to examine the bill for the purpose of determining whether, under the facts pleaded, a decree for relief can in any wise be maintained in some portion of the broad realm of equity.

From the foregoing it necessarily follows that the demurrers to the pending bill must be sustained. Ordered accordingly, and plaintiff excepts.