## MATHIAS H. BAKER,

*vs.*

BANKERS MORTGAGE COMPANY, a corporation of the State of Delaware, ALFRED SOHLAND and DORA SOHLAND, and the HARRISBURG CORPORATION, a corporation of the State of Delaware, and SAMUEL FISHMAN.

### *New Castle, June 22, 1925.*

A stockholder cannot sue in equity in right of corporation, unless corporation will not sue, and its unwillingness to act must be evidenced by refusal after proper demand or that, by reason of hostile interest or guilty participation, responsible managers cannot be expected to sue.

Where by reason of hostile interests, or guilty participation in wrongs complained of, responsible managers of corporation cannot be expected to sue, a demand on them and refusal are not required as conditions precedent to stockholder's right to proceed.

Where there is a good cause of action in behalf of corporation against an officer charged with having profited by breaches of his trust, stockholder's right to sue in behalf of corporation, after refusal to do so by managing director, is not to be defeated because directors voted from corporate treasury sum of money to be paid as retainer to solicitors employed by complaining stockholder.

STATEMENT OF THE CASE.    This is a bill for cancellation of stock and a return of dividends thereon, filed by a stockholder of the Bankers Mortgage Company against said corporation and others.   The principal defendant is Alfred Sohland, who while an officer and director of the company is charged with having fraudulently obtained the shares of stock in question.

At the conclusion of the complainant's testimony taken before an examiner, the defendants, Alfred Sohland and Dora Sohland, moved under *Rule* 75 that the bill be dismissed on two grounds.   The solicitor for the moving defendants agrees that the complainant's motion to strike the second ground from the record may be granted.   The motion to dismiss is therefore based solely on the first ground, which is as follows:

"That the right asserted by the said complainant in his said bill, if existent at all, is the right of the said Bankers Mortgage Company and the testi-

mony offered on behalf of the complainant conclusively shows the absence of the condition precedent to any assertion of such right by the complainant."

*Caleb S. Layton*, of the firm of Marvel, Marvel, Layton and Hughes, and *James R. Morford*, for the complainant.

*Charles F. Curley*, of the firm of Saulsbury, Curley and Davis, for the defendants Sohland.

THE CHANCELLOR. The majority of the present directors of the Bankers Mortgage Company are the same persons who were directors during a part of the time at least when the alleged frauds were committed, and consciously or unconsciously were connected with their perpetration.

On December 22, 1923, the complainant made a demand upon the directors that they take steps in the name of the corporation to correct these alleged frauds and secure redress for the alleged wrongs. Two days latter the directors replied to this demand in part as follows:

"Your letter had the consideration of the board of directors of Bankers Mortgage Company in meeting held this day with the result that it refused to comply with your several demands."

On the day the refusal was resolved upon, the board directed the payment of a sum of money as a retainer to the firm of lawyers who filed the pending bill. The bill was filed two days thereafter.

Under these circumstances, the solicitor for the Sohlands contends that the complainant is not entitled to come into a court of equity as the asserter of his corporation's rights.

It is a clearly established general rule that a cause of action belonging to a corporation must be asserted by the corporation itself. This rule is inflexible at law. But it has its exceptions in equity. A stockholder may under certain circumstances sue in equity in right of the corporation. Where he does so, however, he asserts the right of the corporation. This he is not permitted to do, unless the circumstances be such that the corporation will not sue. Its unwillingness to act must be evidenced by a refusal after proper demand, or by facts which show that by reason of hostile interest or guilty participation in the wrongs complained

of, the responsible managers of the corporation cannot be expected to sue, or would be improper persons to conduct the litigation. In the latter case, a demand upon them and a refusal are for obvious reasons not required, as a condition precedent to the stockholder's right to proceed.

These principles are well settled and have received recognition in this State. *Ellis v. Penn Beef Co.*, 9 *Del. Ch.* 213, 80 *Atl.* 666; *Roberts, et al., v. Kennedy, et al.*, 13 *Del. Ch.* 133, 116 *Atl.* 253; *Harden v. Eastern States Public Service Co., ante p.* 156; *Fleer v. Frank H. Fleer Corp., ante p.* 277.

In the instant case, in view of the existence in office of a majority of the present board when a part at least of Sohland's alleged frauds were committed and their connection therewith, it is a question for debate whether the complainant was bound to demand of the present board that it institute proceedings against Sohland. This question, however, though mentioned at the argument was not pressed. The fact that many of the directors now in office (10, it was stated at the argument, out of 13) by their acts permitted or apparently ratified what was done, may account for their unwillingness to file a bill of complaint against Sohland. Why they should be willing at the same time, however, to assume the apparently contradictory position that the corporate moneys might be used to pay a retainer to the complainant's solicitors for the purpose of encouraging him to proceed against Sohland is not explained. It is not unreasonable to suppose that their reason for this may have been that they apprehended the suit would in some way be prejudiced if conducted by them as managers of the corporation. What their real reason was is left to speculation. One of them testified and gave as the reason for his voting for the refusal, that he preferred not to bother with it. If this was the reason that actuated the others, it was a purely arbitrary one born of an easy indifference to the corporation's welfare or a disbelief in the justice of the complaint. The willingness to supply money for a retainer would indicate that with respect to the testifying director it was a case of easy indifference. If, however, it was a case where the directors lacked faith in the merits of the complaint, their judgment in this regard must at the present stage of the case be presumed to have been mistaken, because no contention is now

made by the defendants to the effect that the complainant's evidence does not support at least a *prima facie* case. That it does make out a *prima facie* case is therefore assumed for the purposes of the present motion.

The question then is whether, where there is a good cause of action in behalf of a corporation against an officer and director who is charged with having profited by breaches of his trust, a stockholder's right to sue in behalf of the corporation after a refusal to do so by the managing directors may be defeated by the circumstance that the directors voted from the corporate treasury a sum of money to be paid as a retainer to the solicitors employed by the complaining stockholder.

The solicitor for the defendants contends that the demand made upon the directors that they institute proceedings must be an earnest and not a simulated demand, and that if the facts disclose that the demand was not of this character then the stockholder has no standing in court. The leading case of *Hawes v. Oakland*, 104 *U. S.* 450, 26 *L. Ed.* 827, is cited and relied upon by the moving defendants as sustaining their contention that under the circumstances here disclosed the demand was neither earnest nor genuine. Mr. Justice Miller in speaking for the court in the cited case used this language:

"He [the stockholder] must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court."

This language was used in a case which was presented on demurrer to a bill in which a demand was alleged to have been made upon the directors; but no allegation was made of a meeting of the directors in which the matter was laid before them for action; and within five days after the demand was made, the stockholder proceeded in his own name. Conceding, as I think we must, that the law is as it was stated by Mr. Justice Miller, in the sentence just quoted from his opinion, it is apparent that the case to which it applied is clearly distinguishable from the instant one. There, there was no refusal; the complainant rushed ahead somewhat precipitately within five days after his application. Here the directors formally refused to act. After such refusal, the speed with which

the rejected applicant moves is of no consequence as throwing light on the earnestness of the demand. The *Hawes Case*, moreover, was a case which involved not a controversy within the corporation as here, but one between the corporation and an outsider, a circcmstance, if I read the case correctly, to which the Supreme Court adverted as of significance upon the question of the extent of the effort which the stockholder must exert in his attempt to induce the governing body to act. There is yet another particular which must be borne in mind when the *Hawes Case* is studied for its principles. This particular has to do with the question of jurisdiction based on diversity of citizenship, a question which is of great importance in the Federal courts but of no moment in the State courts. Mr. Justice Miller in his opinion in the *Hawes Case* points out how by the scheme of inducing a stockholder to file a bill in right of the corporation where the sole ground of jurisdiction is diversity of citizenship, frauds upon the jurisdiction may be committed by collusive suits which violate the letter and spirit of the fifth section of the Act of March 3, 1875 (18 *Stat.* 472). This consideration very naturally prompts the Federal courts in those cases where diversity of citizenship supplies the jurisdictional ground, not only to scrutinize the stockholder's efforts with great care, but as well to examine the reasons and motives of the managing body in its refusal. It is apparent that in the State courts there exists no similar reason for looking into the motives which actuate the directors in their refusal to cause the corporation to act.

Let the motives of the directors therefore be what they may, why should not a stockholder, if the managing body absolutely refuses to act, be permitted to assert on behalf of himself and other stockholders a complaint, not against matters lying in sound discretion and honest judgment, but against frauds perpetrated by an officer in clear breach of his trust? Shall the willingness of the directors that the stockholder should sue, or their sympathy with his action, or even their co-operation with him, be allowed to defeat him? The material inquiry is, will the directors proceed? If in answer to this they say no, it is difficult to see why the stockholder may not. The payment of the retainer by the directors may possibly be questioned as an appropriate application of the cor-

porate funds.   Aside from this, it shows nothing more than an active sympathy with the complainant's course of conduct.   The directors by their refusal have blocked the corporation;  I cannot see how in the light of the present facts their generous aid to the complaining stockholder should be permitted also to block him to the advantage of the alleged wrongdoer.

I see nothing in the evidence as it now stands which warrants a dismissal of the bill.   If the defendants can  produce anything on their side of the case which would give a different complexion to the situation, it will then be in order to re-examine the matter.

The motion will be denied and an order entered accordingly.