ALFRED R. MILLER, Intervenor complainant,

*vs.*

LOFT, INCORPORATED, a corporation of the State of Delaware, and CHARLES G. GUTH, defendants.

*New Castle, March 6, 1931.*

302

*Ayres J. Stockly*, of the firm of Hastings, Stockly & Morris, and *Richard B. Tippett*, of Baltimore, Md., for intervening complainant.

*George N. Davis* and *Clarence A. Southerland*, of the firm of Ward & Gray, and *Charles C. Keedy*, and *Arthur F. Driscoll*, of the firm of O'Brien, Malevinsky & Driscoll, of New York City, for defendants.

THE CHANCELLOR. One ground of demurrer is that the bill fails to show that any demand was ever made upon the board of directors of Loft, Inc., to institute suit upon any of the causes of action alleged in the bill to exist, and that it does not appear from the bill that such demand would be futile. The rule is well settled in this State that if by reason of hostile interest or guilty participation in the wrongs complained of, the directors cannot be expected to institute suit, or if a suit is instituted it is apparent that the directors would not be the proper persons to conduct it, no demand upon them to institute suit is requisite to enable a stockholder to sue in behalf of the corporation. *Sohland v. Baker*, 15 *Del. Ch.* 431, 141 *A.* 277, 58 *A. L. R.* 693; *Baker v. Bankers' Mortgage Co.*, 14 *Del. Ch.* 427, 129 *A.* 775; *Fleer v. Frank H. Fleer Corp.*, 14 *Del. Ch.* 277, 125 *A.* 411; *Harden v. Eastern States Public Service Co.*, 14 *Del. Ch.* 156, 122 *A.* 705; *Roberts, et al., v. Kennedy, et al.* 13 *Del. Ch.* 133, 116 *A.* 253; *Ellis v. Penn Beef Co.*, 9 *Del. Ch.* 213, 80 *A.* 666. The circumstances which constitute an excuse for failure to demand that the directors bring suit ought generally to be set out in the bill. Such excusing circumstances are not set forth in this bill. But the stipulation

entered into by the parties by which a pending bill filed in the name of the corporation by authority of its board of directors was agreed to be converted into a bill by the complainant as an intervening stockholder in his derivative right, saves the bill in its converted form from any objection on the ground that the complaining stockholder has failed to allege the excusing circumstances which entitle him to sue.

Another ground of demurrer is directed to the manner in which the allegations of fraud are made. In paragraph four of the bill, it is charged that the amount of consideration to be paid to Guth was calculated on representations made by Guth which were false, known to Guth to be false, unknown by Loft, Inc., to be false and made by Guth to induce Loft, Inc., to enter into the contract. This allegation cannot stand the test of a demurrer. In the first place, there is a failure to allege that Loft, Inc., relied on the allegedly false representations, an allegation which is essential. In the next place, what the representations were is not shown. Fraud cannot be alleged in any such general manner. Good pleading requires sufficient particularization to inform the party charged with fraudulent representations of the nature of the representations relied upon. Paragraph 4 (c) of the bill is also objectionable because it fails to allege that the representations alleged to be false were relied upon by Loft, Inc. For the same reason paragraphs 4 (e) and 4 (f) of the bill are objectionable. Paragraph 4 (g) which is objected to as defective for want of particularization, etc., when treated as it should be, as an addendum to paragraph 4 (b), which seems to me to be sufficient in point of form, would appear to be without objection.

What pertinency paragraphs 7 and 8 have to the case made by the bill, I cannot see. Paragraph 7 refers to certain alleged facts concerning Mavis Candies, Inc., which arose after Loft, Inc., became its sole owner and while Guth was its manager under contract with Loft, Inc. But those facts, if they all be conceded to be true, have nothing whatever to do either with the circumstances surrounding the execution of the contract sought to be rescinded or with the calculations by which the amount of stock deliverable to Guth under that contract was arrived at. Paragraph 8 sets forth certain allegedly false statements made

by Guth to Loft, Inc., but they appear to have no relation or connection with the contract involved in this suit. They should be either eliminated from the bill or redrawn so as to show their relevancy to this controversy.

I have gone through this bill with the view of discovering what, if any, defects there may be in the form and manner of pleading the fraud alleged. Except as to those heretofore pointed out, and subject to what follows, the rest of the bill's allegations seem to me to be unobjectionable.

There is an important particular, however, in which many of the allegations are open to objection and which should be removed before the defendants are put to their defense. . I refer to the fact that many of the allegations of fraudulent representations are alleged to have been made at a time after the contract had been entered into, and yet are charged to have induced the making of the contract. Such allegations are plainly defective. Things occurring after an event cannot possibly have occasioned the event.

Lastly, there is an objection raised by the demurrer which goes to the whole bill. This objection is that the bill is multifarious. In one of its aspects the bill sets up facts which, if true, would justify the relief of rescission. Such relief is in fact asked. In another of its aspects, the bill sets up facts which if true, would not justify rescission, but would justify an affirmance of the contract but rectify a fraud charged to have been perpetrated in carrying it out, viz., the alleged fraud of Guth in securing by false representations more stock in the way of consideration than he was entitled under the contract to receive. This relief is in fact asked.

The bill thus contains within itself two inconsistent causes of action—one being for rescission of a contract on the ground of fraud, the other being a case predicated on the validity of the contract but seeking relief against the manner in which its terms were executed.

The complainant insists that the bill is to be considered as one seeking alternative relief and that being such it is maintainable. If this bill were in the proper sense of the word one that called simply for alternative relief it would of course not be

objectionable. I do not view it, however, as a bill of that sort. While relief may be sought in the alternative, yet the alternatives presented by it must rest if not on an identical at least on a consistent state of facts. A difference is to be observed between a case on the one hand where on a given state of facts alternative relief may be afforded according as the court should determine the law applicable thereto to be, or according as the adaptability of one remedy over another may be preferable, and a case on the other hand where a set of facts is alleged which would lead to relief on one theory and at the same time another set of facts is alleged absolutely inconsistent with the first which would lead to relief on another and inconsistent theory. In the latter case the situation would be presented of a bill which alleges alternative and inconsistent cases, each seeking its own relief. The choice to be made by the decree in such a case would be not the selection of relief to be afforded to a given case, but the selection between two inconsistent cases of one to be relieved against rather than the other. Such a bill is objectionable. It was so held in the case of *International N. S. E. Corp. v. American N. S. E. Corp.*, *ante p.* 138, 154 *A.* 537, decided by this court April 25, 1930. The bill in that case sought to cancel a written contract which had been signed by the complainant conveying certain exclusive rights under a patent owned by it. The contract, though signed, had never been delivered to the defendant, the other purported party thereto. The bill charged that the defendant had purloined the contract from the complainant's files, and that the defendant was representing the contract as binding on the complainant, whereas the truth was that the contract had never been entered into. The complainant sought to amend the bill by adding an allegation and a prayer for relief which sought a cancellation of the contract on the ground of failure of consideration in that the consideration for it had never been paid. The case thus made by the proposed amendment was inconsistent with the case made by the bill, in that the former presumed that contractual relations had never been entered into, and the latter presumed that they had and should, by reason of subsequent events, be terminated. That being so, leave to file the amendment was denied.

In the instant case, if the intervening complainant can establish the right to cancel the contract on the ground of fraud, there would be no occasion to incur the delay and expense of examining into the question of whether Guth had received too much stock in carrying it out. Such an inquiry would be pertinent only in case the contract was binding. On the other hand, if the contract was binding and the quantity of consideration received by Guth therefore a subject of legitimate inquiry, there could be no occasion for inquiring into the representations that induced its execution.

In *Rollins, et al., v. VanBaalen*, 56 *Mich.* 610, 23 *N. W.* 332, 334, the court held a bill multifarious and therefore bad, because it assumed inconsistent positions—"being filed on the double theory of a sole claim as attaching creditor to avoid the transaction which, as general creditors, they seek to turn into a statutory assignment." In *Emans v. Emans*, 14 *N. J. Eq.* 114, a bill was likewise held multifarious because its alternatives of relief were based on an inconsistency of assumptions. In that case the bill sought a specific performance of an award, but prayed also that if that relief were denied the court should ascertain what the award should have been and enter a decree accordingly. Similar in principle is *Cutter v. Iowa Water Co.*, (*C. C.*) 96 *F.* 777, 783, where it was held that a bill is multifarious if it seeks the setting aside of a decree on the ground that it is void and at the same time seeks relief on the assumption that the decree was valid. Such a bill the court described as one of "alternative cases, and not a case for alternative relief." In *Zell Guano Co. v. Heatherly*, 38 *W. Va.* 409, 18 *S. E.* 611, 612, it is stated that "a bill must not state two inconsistent states of facts, and ask relief in the alternative." Cases may be found of which *Davis v. Peabody*, 170 *Mass.* 397, 49 *N. E.* 750, and *Brown v. Bedford City L. & I. Co.*, 91 *Va.* 31, 20 *S. E.* 968, are illustrative which hold that a bill is multifarious if the complainant seeks the relief of cancellation of a stock subscription alleged to have been obtained on the ground of fraud and at the same time seeks relief against the corporation which only a stockholder is entitled to receive. Such cases rest of course on the proposition that the sort of alternative relief which pleadings in equity countenance is not presented

when the alternatives are between inconsistent states of fact. Reference to the standard works dealing with the subject will disclose a number of other cases to the same effect.

On the ground of multifariousness, the demurrer to the whole bill will be sustained. If the bill is amended so as to remove the objection of multifariousness, the complainant, in redrafting his bill, will be advised by the foregoing of the court's views touching the other grounds of demurrer that were raised and discussed.

Order accordingly.